1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9   Scott Falater,                        )   No. CV 07-0262-PHX-PGR (ECV)
                                           )
10            Petitioner,                  )   **REPORT AND RECOMMENDATION**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Dora B. Schriro, et al.,               )
13                                         )
              Respondents.                 )
14                                         )
                                           )
15  _____      )

16  TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

17          Petitioner Scott Falater has filed, through counsel, a Petition for Writ of Habeas

18  Corpus pursuant to 28 U.S.C. § 2254 in which he challenges his state court conviction for

19  murder.  Doc. #1.

20                                  **BACKGROUND**

21          Following a jury trial in Maricopa County Superior Court in 1999, Petitioner was

22  convicted of first degree murder.  Doc. #12, Exh. U at 2.  He was subsequently sentenced to

23  prison for the remainder of his natural life.  Doc. #12, Exh. V at 23.  Petitioner appealed the

24  conviction by filing a direct appeal in the Arizona Court of Appeals.  Doc. #12, Exh. W, X.

25  On January 17, 2002, the Court of Appeals affirmed the conviction and sentence in a

26  Memorandum Decision.  Doc. #12, Exh. Y.  A Petition for Review to the Arizona Supreme

27  Court was denied on June 28, 2002.  Doc. #12, Exh. AA.

28

On August 5, 2002, Petitioner filed a Notice of Post-Conviction Relief. Doc. #12, Exh. BB. A year later, on August 11, 2003, he filed a Petition for Post-Conviction Relief. Doc. #12, Exh. CC. The trial court denied the petition in a Minute Entry filed on May 6, 2004. Doc. #12, Exh. DD. Petitioner then filed a Petition for Review to the Arizona Court of Appeals, which was denied on June 17, 2005. Doc. #12, Exh. EE. Petitioner's subsequent Petition for Review to the Arizona Supreme Court was denied on February 8, 2006. Doc. #12, Exh. FF, GG.

Petitioner filed his Petition for Writ of Habeas Corpus in federal court on February 2, 2007, along with a Memorandum in Support and other supporting documents. Doc. #1 - #5. Petitioner alleges three grounds for relief. In ground one, Petitioner alleges that his right to due process under the Fifth and Fourteenth Amendments was denied when the trial court refused to give a jury instruction regarding somnambulistic automatism (sleepwalking). In ground two, Petitioner alleges that numerous acts of prosecutorial misconduct pervaded the trial, denying Petitioner his right to a fair trial under the Due Process Clause. In ground three, Petitioner alleges that his right to due process was denied when the state court, on post-conviction relief, denied his claim of newly discovered evidence without ordering additional testing or granting an evidentiary hearing. On April 23, 2007, Respondents filed an Answer to Petition for Writ of Habeas Corpus. Doc. #12. Petitioner filed a Reply in support of his petition on May 23, 2008. Doc. #14.

The Arizona Court of Appeals summarized the facts of the case as follows:

> At about 10:15 p.m. on January 16, 1997, defendant stabbed his wife, Yarmilla ("victim"), forty-four times. He used a hunting knife that had a five-and-a-half inch blade.

> Defendant stabbed and cut the victim all over the upper part of her body – in her chest, back, head, ears, and neck. He also inflicted several "defensive" wounds to her hands.

> Defendant's next door neighbor, Greg Koons ("Koons"), was about to go to sleep when his girlfriend told him that she had just heard a woman screaming. Koons went out to his backyard and heard moaning coming from defendant's backyard. Then he heard someone walk into defendant's garage.

> Koons went to the six foot high wall that separated the two yards, stood on a planter made of railroad ties, and looked over. He saw a woman lying on

the ground, with her head towards the house and her feet towards the swimming pool. As he watched, the woman rolled onto her left side, put her right arm over the top of her head, moved her legs a bit, then laid on her back again. Koons' initial impression was that the woman, who turned out to be the victim, was probably drunk.

Koons then saw lights go on in the upstairs master bedroom and bathroom of defendant's house. He saw defendant, wearing a white T-shirt, walk past the bedroom window and go into the bathroom. After a few minutes, defendant turned off the upstairs light and went downstairs into the kitchen, where he appeared to be wringing his hands as if he had just washed them. Defendant then opened a sliding glass door that led to his backyard and motioned for the dog to lie down, which it did.

Defendant then walked within two or three feet of the victim and looked down at her as though he was "wondering what to do with her." After about 30 seconds, defendant walked back inside the house and shut the sliding glass door.

Koons next saw defendant walk out of his garage, putting on canvas work gloves. Defendant walked up to the victim, stepped over her, and dragged her towards the pool. Defendant then knelt down beside the victim, pushed her into the pool and held her head under water. Koons then left to call 911.

Police subsequently found the murder weapon, bloody jeans, gloves, boots, undergarments, and similar items inside a Tupperware container and a garbage bag that were hidden in the spare tire well of defendant's vehicle.

Dr. Keen, the chief medical examiner, testified that because the stab wounds in victim's chest had bled more than those in the back, the chest wounds had probably been inflicted first. Dr. Keen agreed that the upward trajectory of the frontal wounds was consistent with the taller defendant having approached the victim from behind, reaching around and stabbing her in the chest. Dr. Keen also testified that the victim had possibly died before being pushed into the pool, but that the facts were a "little ambiguous." Because liquid of an undetermined type, possibly water, had been found in the victim's left lung and water had been found in her sinuses, Dr. Keen opined that "she may have been alive" when she was put in the pool.

The death certificate, executed by Dr. Ann Bucholtz, the pathologist who actually performed the autopsy, listed "multiple stab wounds with drowning" as the cause of death.

## DISCUSSION

Respondents contend that ground one should be dismissed because it raises a state law question that is not cognizable on habeas review. Alternatively, Respondents argue that the standard for habeas relief on the merits has not been satisfied. Regarding ground two, Respondents also argue that the habeas standard has not been satisfied. Regarding ground

- 3 -

1  three, Respondents contend that the claim is procedurally defaulted and not a cognizable
2  federal claim.

3        **1.**    **AEDPA Standard of Review**

4        Under the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any
5  claim that was adjudicated on the merits in State court proceedings" unless the State court
6  decision was (1) contrary to, or an unreasonable application of, clearly established federal
7  law as determined by the United States Supreme Court; or (2) based on an unreasonable
8  determination of the facts in light of the evidence presented in the State court proceeding.
9  28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J.,
10 concurring and delivering the opinion of the Court as to the AEDPA standard of review).
11 A state court's decision is "contrary to" clearly established precedent if (1) "the state court
12 applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2)
13 "if the state court confronts a set of facts that are materially indistinguishable from a decision
14 of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."
15 Taylor, 529 U.S. at 405-06.   "A state court's decision can involve an 'unreasonable
16 application' of Federal law if it either (1) correctly identifies the governing rule but then
17 applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails
18 to extend a clearly established legal principle to a new context in a way that is objectively
19 unreasonable."   Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).   Thus, the
20 "unreasonable application" clause requires the state court's application of Supreme Court law
21 to be more than incorrect or erroneous; it must be objectively unreasonable.  Lockyer v.
22 Andrade, 538 U.S. 63, 75 (2003).  "When applying these standards, the federal court should
23 review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044,
24 1055 (9th Cir. 2004).

25 *///*
26 *///*

27 ───────────────

28       [1] Antiterrorism and Effective Death Penalty Act of 1996.

- 4 -

## 2.     Ground One

Petitioner claims in ground one that the trial court's refusal to instruct the jury on the defense of somnambulistic automatism impermissibly shifted the burden of proof in violation of the Due Process Clause and In re Winship, 397 U.S. 358 (1970).  Petitioner claims that the defense of sleepwalking was a direct challenge to the voluntary act element that the prosecution was required to prove and, consequently, the jury should have been instructed that the prosecution had the burden to disprove the sleepwalking defense beyond a reasonable doubt.  Petitioner, however, did not properly raise this issue as a federal claim in the state court.

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).  To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).  In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief.  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir.1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001).  "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law."  Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d 904 (9th Cir. 2001).  "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court."  Johnson v. Zenon,

1   88 F.3d 828, 830 (9th Cir. 1996).   "Moreover, general appeals to broad constitutional

2   principles, such as due process, equal protection, and the right to a fair trial, are insufficient

3   to establish exhaustion." Hivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Gray

4   v. Netherland, 518 U.S. 152, 162-63 (1996)).

5          If a petition contains claims that were never fairly presented in state court, the federal

6   court must determine whether state remedies remain available to the petitioner.  See Rose v.

7   Lundy, 455 U.S. 509, 519-20 (1982); Harris v. Reed, 489 U.S. 255, 268-270 (1989)

8   (O'Connor, J., concurring).  If remedies are still available in state court, the federal court may

9   dismiss the petition without prejudice pending the exhaustion of state remedies.  Id.

10  However, if the court finds that the petitioner would have no state remedy were he to return

11  to the state court, then his claims are considered procedurally defaulted. Teague v. Lane, 489

12  U.S. 288, 298-99 (1989); see also Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002) (a

13  defendant's claim is procedurally defaulted when it is clear that the state court would hold

14  the claim procedurally barred).  The federal court will not consider these claims unless the

15  petitioner can demonstrate that a miscarriage of justice would result, or establish cause for

16  his noncompliance and actual prejudice.  See Dretke v. Haley, 124 S.Ct. 1847, 1851-52

17  (2004); Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman v. Thompson, 501 U.S. 722,

18  750-51 (1991);  Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

19         In the opening brief of his direct appeal, Petitioner claimed that the trial court erred

20  by refusing to give a sleepwalking instruction but he did not argue that such refusal violated

21  the Due Process Clause.  Doc. #12, Exh. W at 18-23.  In a supplemental opening brief,

22  Petitioner again raised the jury instruction issue. Doc. #12, Exh. X at 1-7.  In the second to

23  last sentence of the argument, Petitioner asserted that he "was denied his right to a fair trial

24  and due process of law." Doc. #12, Exh. X at 6.  He presented no other argument or analysis

25  to support a violation of the Due Process Clause.  Similarly, in his petition for review to the

26  Arizona Supreme Court on direct review, Petitioner's only reference to a violation of "due

27  process rights" was in the last sentence of the argument.  Doc. #12, Exh. Z at 5-8.  These

28

1   general appeals to due process and the right to a fair trial do not establish a fair presentation

2   of the claim in the state court.

3        By failing to fairly present the claim in the state court, Petitioner has failed to exhaust

4   his state court remedies.  Moreover, Petitioner would no longer have a remedy if he returned

5   to the state court.[2]  As a result, the claim is procedurally defaulted.  Petitioner has not alleged

6   cause for the default and actual prejudice, nor has he shown a miscarriage of justice to

7   overcome the procedural default.  The court will therefore recommend that ground one be

8   denied.

9        In light of the fact that Respondent did not argue procedural default as a defense to

10  ground one, the court will also address the merits.  For Petitioner to establish under 28 U.S.C.

11  § 2254(d) that the state court's decision was "contrary to, or an unreasonable application of,

12  clearly established federal law as determined by the United States Supreme Court," he must

13  show that there is clearly established Supreme Court law on the issue presented.  Davis v.

14  Grigas, 443 F.3d 1155, 1158 (9th Cir. 2006).  The Supreme Court case cited by Petitioner in

15  support of his claim is In re Winship, 397 U.S. 358 (1970).  The Court in that case held that

16  "the Due Process Clause protects the accused against conviction except upon proof beyond

17  a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

18  Id. at 364.  The court further held that the proof beyond a reasonable doubt standard also

19  applies during the adjudicatory stage of a juvenile delinquency proceeding.  Id. at 368.

20       Here, the Arizona Court of Appeals ruled that Petitioner's proposed instructions on

21  somnambulistic automatism amounted to improper comments on the evidence.  Doc. #12,

22  Exh. Y at 7.  The court further ruled that a separate sleepwalking instruction was not required

23  because the trial court gave an instruction requiring the prosecution to prove beyond a

24  reasonable doubt that Petitioner committed a voluntary act.  Doc. #12, Exh. Y at 9-10.  The

25  instruction defined what constitutes a voluntary act.  Doc. #12, Exh. Y at 10.  The court

26

27      [2] The time has passed to seek post-conviction relief in state court under Rule 32.4(a)
    of the Arizona Rules of Criminal Procedure and Petitioner has not shown that any of the

28  exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him.

1  found that the instructions given by the trial court adequately explained the applicable law

2  and did not mislead the jury about the burden of proof.  Id.

3      Petitioner cites Winship for the proposition that the prosecution was required to prove

4  voluntariness and disprove Petitioner's sleepwalking defense beyond a reasonable doubt.

5  There is no dispute that the prosecution was required to prove beyond a reasonable doubt that

6  Petitioner committed a voluntary act, and, as stated, the jury was given an instruction

7  explaining that requirement.  Petitioner, however, has not shown that Winship or any other

8  Supreme Court case law, required the court to instruct the jury that the prosecution must

9  prove beyond a reasonable doubt that Petitioner was not in a state of somnambulistic

10  automatism when he committed the offense.  Nor has Petitioner shown that Winship or any

11  other Supreme Court case law required the trial court to give one of his proposed

12  instructions, or any instruction, on somnambulistic automatism.  Winship is not a case

13  involving an affirmative defense and nothing in that case requires the kind of instruction that

14  Petitioner sought here.  As a result, Petitioner has not demonstrated that the Arizona Court

15  of Appeals decision on this issue is contrary to or an unreasonable application of Supreme

16  Court law.  Moreover, Petitioner has not even alleged that the decision was based on an

17  unreasonable determination of the facts in light of the evidence presented in the state court

18  proceeding.  Having failed to meet the standard for habeas relief, the court will recommend

19  that Petitioner's claim in ground one be denied.

20      **3.    Ground Two**

21      Petitioner claims in ground two that several instances of prosecutorial misconduct

22  denied him his right to a fair trial in violation of the Due Process Clause.  Petitioner claims

23  that the state court's disposition of this claim was contrary to, or involved an unreasonable

24  application of, clearly established federal law.

25      Petitioner cites Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), in which the

26  Court asked whether the prosecutor's conduct "so infected the trial with unfairness as to

27  make the resulting conviction a denial of due process."  The Arizona Court of Appeals

28  addressed the alleged instances of prosecutorial misconduct in its Memorandum Decision and

1   applied the DeChristoforo standard.  Doc. #12, Exh. Y at 16-17.  The court found the

2   allegations of misconduct to be without merit.  It ruled that the prosecutor's arguments were

3   reasonable inferences from the evidence and that the prosecutor's questions on cross-

4   examination were not so argumentative as to render the trial unfair.

5           Beyond merely citing the clearly established Supreme Court law, Petitioner fails to

6   satisfy the standard for federal habeas relief.  As explained above, a state court's decision is

7   "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts

8   the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a

9   set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

10  nevertheless arrives at a result different from [its] precedent."  Taylor, 529 U.S. at 405-06.

11  Petitioner does not argue that the state court applied a rule that contradicts DeChristoforo,

12  nor could he given the state court's citation to and application of that standard.  Petitioner

13  also does not argue that the state court confronted a set of facts indistinguishable from

14  DeChristoforo or another Supreme Court case and reached a different result.  Thus, Petitioner

15  has not demonstrated that the state court decision is contrary to clearly established federal

16  law as determined by the Supreme Court.

17          Petitioner also fails to demonstrate that the state court decision involves an

18  unreasonable application of clearly established federal law.  As explained above, to meet this

19  standard, Petitioner must show that the state court applied the governing rule, or failed to

20  extend it, in a way that is objectively unreasonable, not merely in a way that was incorrect

21  or erroneous.  See Hernandez, 282 F.3d at 1142.  Petitioner does not argue and has in no way

22  demonstrated that the state court decision regarding prosecutorial misconduct is objectively

23  unreasonable.

24          Finally, with regard to the second element of the habeas standard under 28 U.S.C. §

25  2254, Petitioner does not argue that the state court's decision is based on an unreasonable

26  determination of the facts in light of the evidence presented in the State court proceeding.

27  As a result, Petitioner has not met the standard for habeas relief with respect to his claims of

28

1   prosecutorial misconduct in ground two, and the court will therefore recommend that the

2   claims be denied.

3          **4.     Ground Three**

4          Lastly, in ground three of his habeas petition, Petitioner claims that his rights under

5   the Due Process Clause were denied when the state court denied him an evidentiary hearing

6   and additional testing based on new information supporting the sleepwalking defense he

7   presented at trial.  In his state petition for post-conviction relief, Petitioner argued that newly

8   discovered evidence supported his defense theory that he killed his wife while in a

9   sleepwalking state.  Doc. #12, Exh. CC.  After the state trial court denied the petition, the

10  Arizona Court of Appeals denied a petition for review filed by Petitioner.  Doc. #12, Exh.

11  EE.  Petitioner subsequently filed a Petition for Review in the Arizona Supreme Court.  Doc.

12  #12, Exh. FF.  As Respondents argue, Petitioner failed to allege a violation of the Due

13  Process Clause in that petition for review to the Arizona Supreme Court.

14         For whatever reason, however, Respondents have not provided the court with a copy

15  of the petition for review to the Arizona Court of Appeals and do not argue that Petitioner

16  failed to raise a Due Process Clause claim in that petition for review.  Thus, it's not clear to

17  the court whether such a claim was raised in the petition for review to the Court of Appeals.

18  Notably, Petitioner fails to address the procedural default issue in his Reply to Respondents'

19  Answer to Petition for Writ of Habeas Corpus.  Petitioner does not argue that in fact he did

20  raise a Due Process Clause claim in the petition for review to the Court of Appeals, which

21  suggests no such claim was raised.  The claim therefore appears to be procedurally defaulted.

22  However, because the information provided to the court does not definitively establish

23  procedural default, the court will not reject the claim on that basis.

24         Alternatively, Respondents argue that the state court's refusal to set an evidentiary

25  hearing or allow additional testing on post-conviction relief is not a cognizable federal claim.

26  Federal habeas relief is not available for alleged errors in state post-conviction proceedings.

27  Carriger v. Stewart, 95 F.3d 755, 762-763 (9th Cir. 1996), vacated on other grounds, 132 F.3d

28  463 (1997).  A petitioner's claim that his right to due process was violated during state post-

- 10 -

1 conviction proceedings may not considered on federal habeas review.  See Villafuerte v.

2 Stewart, 111 F.3d 616, 632 n.7 (9th Cir. 1997) (denial of due process during state habeas

3 proceedings not addressable in federal habeas petition); Franzen v. Brinkman, 877 F.2d 26

4 (9th Cir. 1989) (petitioner's alleged due process violation based on a delay in deciding his

5 state petition for post-conviction relief may not be considered on federal habeas review).

6        In his reply, Petitioner does not address the argument that federal courts are without

7 authority to address alleged errors in state post-conviction proceedings.  Rather, he argues

8 that the new information about testing for sleepwalking constitutes newly discovered

9 evidence that provides affirmative proof of his actual innocence.  The court disagrees with

10 Petitioner's characterization of the information.  As the trial court stated when it denied

11 Petitioner's request to present new evidence:

> The Court finds the new sleep studies may expand on the expert testimony
> presented at trial, but just by presenting new methods of scoring and recent
> studied on sleepwalking.  However, the Court finds all of this far too
> speculative.  Defendant may well have been a sleepwalker, but none of the
> studies can demonstrate whether he was sleepwalking on the night of the
> homicide.

        Based on the above authority, this court may not consider on habeas review

Petitioner's claim that the trial court violated his right to due process by refusing to set an

evidentiary hearing or permit additional sleep testing.  Petitioner has not demonstrated

otherwise.  Accordingly, the court will recommend that the claim in ground three be denied.

**IT IS THEREFORE RECOMMENDED:**

        That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1)

be **DENIED** and **DISMISSED WITH PREJUDICE**;

        This recommendation is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment.  The

parties shall have ten days from the date of service of a copy of this recommendation within

which to file specific written objections with the Court.  See, 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a

response to the objections.  Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

DATED this 9th day of May, 2008.

Edward C. Voss
United States Magistrate Judge

- 12 -